# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00884-COA

IN THE INTEREST OF J.B., A MINOR: C.N.                    APPELLANT

v.

MISSISSIPPI DEPARTMENT OF CHILD                           APPELLEE
PROTECTION SERVICES

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2024 |
| TRIAL JUDGE: | HON. H. CRAIG TREADWAY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANT: | C.N. (PRO SE) |
| ATTORNEYS FOR APPELLEE: | KIMBERLY GOLDEN GORE |
| | JOSE BENJAMIN SIMO |
| | ROBERT EUGENE JONES II |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | APPEAL DISMISSED - 06/30/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND WEDDLE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     A mother, C.N., refused to allow her child, J.B.,[1] to return home after J.B. was released from Parkwood Behavioral Health System. The Mississippi Department of Human Services ("MDHS") reported the mother's refusal to the Mississippi Department of Child Protection Services ("CPS"), which determined that it was in the child's best interest to be placed in agency custody. The DeSoto County Youth Court adjudicated J.B. to be a neglected child when C.N. admitted to the neglect. Even though C.N. later moved to withdraw her admission, the youth court held a disposition hearing and ordered that physical

---

[1] Initials have been used in this case to protect the identity of the minor.

and legal custody of J.B. remain with CPS. C.N. appeals the disposition order and the denial of her motion to withdraw her admission of neglect. But because the disposition order is not a final, appealable order, this Court lacks jurisdiction, and we must dismiss the appeal.

## FACTS

¶2. On March 26, 2024, C.N. refused to allow J.B. to return home after J.B. was released from Parkwood Behavioral Health System. Parkwood had diagnosed J.B. with Disruptive Mood Dysregulations Disorder, Attention Deficit Disorder, and Oppositional Defiant Disorder and noted cannabis use. MDHS reported the incident, and CPS determined that placement in agency custody was in the child's best interest.

¶3. CPS further reported that C.N. stated J.B. had become disruptive in the home and that based on J.B.'s past behaviors, C.N. "would kill her" if the behaviors continued. Thus, C.N. stated she was willing to admit to an abandonment charge. C.N., who had four other children living with her, also disclosed her own mental health challenges and admitted that approximately five years earlier, she had choked one of the other children, and she said she would do so again. CPS ultimately concluded in its investigation report that J.B. was neglected.

¶4. On April 1, 2024, the youth court held a shelter hearing and placed J.B. with her father, J.S. However, that placement ended on April 17, 2024, after J.B. and J.S. engaged in a physical altercation.

## PROCEDURAL HISTORY

¶5. On March 27, 2024, the State filed a petition under Mississippi Code Annotated

2

section 43-21-105(l)-(m) (Supp. 2024),[2] alleging in Count I that J.B. was a neglected and/or emotionally abused child. In Count II, the State alleged that "the mother refused to pick up the child from treatment and threatened harm to the child thereby placing the other children

---

[2] Mississippi Code Annotated section 43-21-105(l)-(m) provides:

(l) "Neglected child" means a child:

(i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under any provision of this chapter; or
(ii) Who is otherwise without proper care, custody, supervision or support; or
(iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or
(iv) Who is not provided by the child's parent, guardian or custodian, with food, clothing, or shelter necessary to sustain the life or health of the child, excluding such failure caused primarily by financial inability unless relief services have been offered and refused and the child is in imminent risk of harm.

(m) "Abused child" means a child whose parent, guardian or custodian or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused, upon the child, sexual abuse, sexual exploitation, commercial sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury or other maltreatment. However, physical discipline, including spanking, performed on a child by a parent, guardian or custodian in a reasonable manner shall not be deemed abuse under this section. "Abused child" also means a child who is or has been trafficked within the meaning of the Mississippi Human Trafficking Act by any person, without regard to the relationship of the person to the child.

at risk for harm." That same day, the youth court ordered physical and legal custody of J.B. and the "other four children" to be placed with CPS in DeSoto County. The court also entered an intake order, referred the case to the prosecutor for formal proceedings, and appointed a guardian ad litem (GAL) for J.B.

¶6.    The GAL recommended that the court return J.B. and the other four children to C.N.'s home for a trial period. On May 5, 2024, the youth court returned J.B. to C.N.'s custody only for a ninety-day trial with home placement, but the other children were returned to the home without a trial basis. On May 7, 2024, the youth court conducted an adjudication hearing, and the State dismissed Count I, which alleged emotional abuse. The State then moved ore tenus to amend Count II to allege that "the mother refused to pick up the child from treatment" and that C.N. admitted this allegation.

¶7.    Later that day, the DeSoto County Youth Court entered an order, adjudicating J.B. to be a neglected child pursuant to Mississippi Code Annotated 43-21-105(l)-(m) and ordering a ninety-day trial with home placement with C.N. The court remanded the four remaining petitions involving the other children to the file.[3] However, on May 30, 2024—during the ninety-day-trial home placement—the Olive Branch Police Department responded to C.N.'s home after receiving reports of a physical altercation between J.B. and her siblings. Subsequently, officers transported J.B. to the DeSoto County Juvenile Detention Center.

¶8.    On June 18, 2024, C.N. moved to withdraw her admission of neglect made during the

---

[3] It is unclear in the record whether C.N. has four or five children since the court only called out the numbers for J.B. and three children but consistently referred to the "other four children."

adjudication hearing and requested an emergency hearing on her motion based on an alleged change in circumstances. On June 25, 2024, the youth court denied C.N.'s motion for an emergency hearing, noting that "several matters [were] set to be heard on July 9, 2024."

¶9. On July 9, 2024, the youth court heard C.N.'s motion to withdraw her admission before proceeding with the scheduled disposition hearing. Before ruling, the court noted that granting C.N.'s motion to withdraw her admission would require the court to schedule the matter for trial. The court denied C.N.'s motion to withdraw, finding that C.N.'s admission was not the result of coercion. The court then proceeded with the disposition hearing.

¶10. The court (1) found that J.B. was a neglected child, ordered CPS to retain legal and physical custody, and scheduled the next hearing; (2) found that CPS had complete authority to provide for J.B.'s medical and psychological care; (3) ordered CPS to make reasonable efforts to achieve the permanency plan of reunification with a parent or primary caretaker; (4) ordered C.N. to submit to a drug screen by end of the week, to provide proof of therapy attendance, and to account for all funds belonging to J.B.; (5) relieved C.N.'s court-appointed attorney from further representation after C.N. refused to provide the court with an updated financial affidavit; (6) ordered that C.N. be searched before entering the Juvenile Detention Center because she brought recording devices into the courthouse to secretly record court staff; and (7) set a permanency hearing for October 29, 2024. That same day, the youth court entered a separate order denying C.N.'s motion to withdraw her admission.

¶11. On July 25, 2024, C.N. filed her notice of appeal of the disposition order and the order denying her motion to withdraw her admission of neglect. However, the youth court

5

continued to exercise jurisdiction over J.B. by setting a permanency hearing and other matters for October 29, 2024.

**STANDARD OF REVIEW**

¶12. "Whether raised by the parties or not, this Court is required to note its own lack of jurisdiction." *In re C.R. v. Miss. Dep't of Child Prot. Servs.*, 363 So. 3d 977, 979 (¶5) (Miss. Ct. App. 2019) (quoting *Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995)). The chancellor's interpretation and application of the law is reviewed de novo. *In re D.K. v. Youth Ct. of Lincoln Cnty.*, 377 So. 3d 991, 1001 (¶30) (Miss. Ct. App. 2023) (quoting *Stuckey v. Stuckey*, 341 So. 3d 1030, 1036 (¶13) (Miss. Ct. App. 2022)). Further, "this Court's standard of review of youth court cases is limited." *Id.* (quoting *In re L.H.*, 87 So. 3d 1139, 1144 (¶22) (Miss. Ct. App. 2012)) (citing *In re A.J.M.*, 911 So. 2d 576, 579 (¶10) (Miss. Ct. App. 2005)).

¶13. "[W]hen the Youth Court makes an adjudication of neglect, this Court considers all the evidence considered by the Youth Court in the light most favorable to the State." *In re D.O.*, 798 So. 2d 417, 421 (¶13) (Miss. 2001). The youth court's "findings of fact are [re]viewed under the manifest error/substantial credible evidence test." *S.Z.O. v. Harrison Cnty. Dep't of Child Prot. Servs.*, 396 So. 3d 1225, 1235-36 (¶45) (Miss. Ct. App. 2024). In complying with this standard, "this Court asks not how it would have decided the case *ab initio* but whether credible proof exists to support the judge's findings of fact by clear and convincing evidence." *Id.* "If the evidence is such that, beyond a reasonable doubt, reasonable [minds] could not have reached the youth court's conclusion, we must reverse.

6

However, if the evidence in the record supports the youth court's adjudication, considering the reasonable-doubt standard, then we must affirm." *In re Int. of S.M.K.S. v. Youth Ct. of Union Cnty.*, 155 So. 3d 747, 749 (¶7) (Miss. 2015).

## DISCUSSION

¶14. C.N. raises multiple issues on appeal, but we will only address the issue of jurisdiction.[4] In response, CPS contends: (1) that the DeSoto County Youth Court had exclusive subject matter jurisdiction over the case; (2) that C.N. was represented at all stages of the proceedings; (3) that CPS did not respond to C.N.'s ineffective assistance of counsel argument; (4) that an admission is not a plea for the purposes of adjudication in youth court; and (5) that the youth court's acceptance did not violate any statutory provision or appellant's due process rights.

¶15. Although the parties do not raise the issue of our jurisdiction, when necessary, we must examine the record sua sponte to determine this Court's jurisdiction of the appeal. *Magnolia Health Plan Inc. v. Miss. Cmty. Mental Health Comm'ns.*, 334 So. 3d 42, 46 (¶14) (Miss. 2021); *see also In re L.C.*, 394 So. 3d 517, 527 (¶28) (Miss. Ct. App. 2024) (stating an appellate court must address issues of jurisdiction sua sponte). In this case, we find that we lack appellate jurisdiction to hear C.N.'s appeal pursuant to Mississippi Code Annotated section 43-21-651,[5] which was amended in July 2024 and now requires an interlocutory

---

[4] C.N. raises issues on appeal regarding subject matter jurisdiction, a due process violation because she was unrepresented, ineffective assistance of counsel, and her allegation that she was coerced into admitting that she abandoned J.B.

[5] Section 43-21-651 was amended and became effective on July 1, 2024, prior to July 25, 2024, when this appeal was perfected.

7

appeal from a disposition order. 2024 Miss. Laws ch. 531, § 11 (S.B. 2792). Section

43-21-651 now states in part:

> (1)(a) The court to which appeals may be taken from final orders or decrees of the youth court shall be the Supreme Court of Mississippi pursuant to the Rules of Appellate Procedure. Final Orders in youth court include orders that grant durable legal custody[6] or durable legal relative guardianship,[7] transfer jurisdiction over the minor child to another court, such as for an adoption, or otherwise terminate the jurisdiction of the youth court over the minor child. All factual findings, legal determinations, and adjudication of issues by the youth court prior to the time the final order is entered are preserved for appellate review and any common law to the contrary is expressly abrogated. *Any matters adjudicated by the youth court through interim orders such as adjudication/disposition orders, or permanency review orders, may be only appealed through the interlocutory appeal process provided by the Rules of Appellate Procedure.*

Miss. Code Ann. § 43-21-651(1)(a) (emphasis added).

¶16. "Prior to the amendment [of section 43-21-651], a disposition order was considered

a final, appealable order for purposes of direct appeal." *R.W. v. Miss. Dep't of Child Prot.*

*Servs.*, 395 So. 3d 63, 65 n.2 (Miss. 2024); *see, e.g.*, *In re M.M.*, 319 So. 3d 1188, 1204 n.5

---

[6] Mississippi Code Annotated section 43-21-105(y) provides the following definition:

"Durable legal custody" means the legal status created by a court order which gives the durable legal custodian the responsibilities of physical possession of the child and the duty to provide him with care, nurture, welfare, food, shelter, education and reasonable medical care. All these duties as enumerated are subject to the residual rights and responsibilities of the natural parent(s) or guardian(s) of the child or children.

[7] Mississippi Code Annotated section 43-21-105(dd) provides the following definition:

"Durable legal relative guardianship" means the legal status created by a youth court order that conveys the physical and legal custody of a child or children by durable legal guardianship to a relative or fictive kin who is licensed as a foster or resource parent.

(Miss. Ct. App. 2021) ("An adjudication order becomes an appealable judgment only after a disposition order is entered by the youth court." (citing *In re Int. of J.P.C. v. State*, 783 So. 2d 778, 781 (Miss. Ct. App. 2000))). However, pursuant to the amendment, disposition orders are now not final for purposes of appeal.

¶17.   Here, the youth court entered a disposition order and continued to exercise jurisdiction over J.B. and C.N. after the notice of appeal was filed. Among other things, specifically, the youth court scheduled a permanency hearing, which was held after C.N. filed her notice of appeal. The disposition order did not terminate the youth court's jurisdiction over J.B. and, therefore, was not a final order under section 43-21-651(1)(a). And because C.N. pursued a direct appeal of the disposition order instead of an interlocutory appeal, this Court lacks jurisdiction to consider this appeal.

## CONCLUSION

¶18.   The disposition order is not a final, appealable order under section 43-21-651(1)(a); therefore, this Court lacks jurisdiction of C.N.'s appeal. Accordingly, we dismiss the appeal.

¶19.   **APPEAL DISMISSED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**